IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ENTERED
LODGED RECEIVED
JUN 19 2000
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

ACCRUED FINANCIAL SERVICES, INC. *
*
*
v. * Civil No. JFM-99-2573
*
PRIME RETAIL, INC., ET AL. *
*
*****

MEMORANDUM

Accrued Financial Services, Inc. ("AFS") has brought this action against two affiliated companies, Prime Retail, Inc. ("Prime") and Horizon Group, Inc. ("Horizon"). AFS, as the assignee of commercial tenants in factory outlet malls managed by defendants, claims that defendants fraudulently over-billed the tenants for common area maintenance charges. Defendants have filed a motion to dismiss. The motion will be granted.

I.

Tenants in factory outlet malls typically have the right under their leases to conduct audits of common area maintenance charges assessed by the manager of a mall. AFS provides various services in the commercial real estate industry, including the performance of such audits for tenants. Ordinarily, AFS is compensated by a percentage of the amount it saves for the tenant by way of refund or partial abatement of future rent. Sometimes, as in this case, AFS takes an assignment of the tenants' claims against the landlord and/or manager of a mall.

AFS alleges that in 1997 it conducted audits at Horizon and Prime.[1] According to AFS, its audits revealed systemic and pervasive errors in the assessments made by Horizon and Prime, and repeated efforts by them to conceal from the tenants the true nature of the charges being made. AFS obtained assignments from many (but not all) of the tenants at the malls and, based upon what it learned during the course of the audits, instituted this suit. It asserts RICO claims as well as common law claims for fraud, tortious interference with contract, and a violation of the California Unfair Competition statute.

II.

Defendants make numerous arguments in support of their motion to dismiss, including the following: (1) AFS lacks standing because it is not the real party in interest as to most of the claims it asserts; (2) AFS fails to allege any RICO predicate acts with particularity, fails to allege a RICO "enterprise" distinct from the RICO "persons," and does not make sufficient allegations demonstrating how certain defendants participated in the operation or management of the enterprise; (3) the common law claims upon which AFS sues as assignee are unassignable; and (4) the tenants (from whom AFS' right to sue is derived) are not competitors or consumers entitled to protection under the California Unfair Competition statute. I need not decide the issues raised by these arguments since I find persuasive a broader contention made by

[1] At the time, the two companies were independent of one another. However, since the audits, Prime has acquired Horizon by merger and now operates the former Horizon malls involved in this case.

defendants: that the assignments made by the tenants to AFS are void as a matter of public policy because they are champertous.[2]

III.

Under the terms of the agreements between AFS and the tenants, AFS is to receive either forty or fifty percent of any judgment received from litigation instituted by AFS against the defendants. The agreements contemplate that AFS employees will perform the audit services and, according to an averment that AFS has made in opposing a motion to dismiss or to transfer in a prior related action, AFS employees intend to appear as audit witnesses at trial.

The agreements between AFS and the tenants call for the application of California law. Under California law contingent fee witness agreements are clearly void as violative of public policy. See, e.g., Von Kesler v. Baker, 21 P.2d 1017 (Cal. Dist. Ct. App. 1933); Ojeda v. Sharp Cabriollo Hosp., 10 Cal. Reptr. 2d 230 (Ct. App. 1992). Therefore, the assignments fail unless the parties' contractual choice of law is to be disregarded.

There is no reason that should be done. Section 187 of the Restatement (Second) of Conflict of Laws (1971) provides an appropriate source for guidance on the choice of law issue.

---

[2] The RICO issues are vexing, and I will decline to comment upon them. However, it may be useful for me to state briefly my conclusions as to the other arguments defendants make. First, I am satisfied that in light of the ratifications AFS has obtained, the assignments are sufficient to meet the Fed. R. Civ. P. 17(a) concerns raised by defendants. Second, I am persuaded that the tenants' common law fraud and punitive damage claims are not assignable under California law. I do not read Jackson v. Rogers & Wells, 258 Cal. Rptr. 454, 459-60 (Ct. App. 1989) as being limited to legal malpractice cases. Rather, I believe that California law draws a distinction on the assignability question between a specific item of property that has been fraudulently obtained and a "mere naked right of action for fraud and deceit." Jackson v. Deauville Holding Co., 27 P.2d 643, 645 (Cal. 1933). Third, I do not believe that the tenants are competitors or consumers of the defendants and therefore are not entitled to the protection afforded by California's Unfair Competition statute. Cal. Bus. & Prof. Code § 17200 et seq.; see also Tippett v. Terich, 44 Cal. Rptr. 2d 862, 874 (Ct. App. 1995).

Maryland and California have both adopted § 187. See National Glass, Inc. v. J.C. Penney Properties, Inc., 650 A.2d 246, 248 (Md. 1994); Nedlloyd Lines B.V. v. Superior Court of San Mateo County, 834 P.2d 1148, 1151 (Cal. 1992). Federal courts have done the same in deciding choice-of-law issues as to federal claims. See Harris v. Polskie Linie Lotnicze, 820 F.2d 1000, 1003 (9th Cir. 1987); In re Catfish Antitrust Litig., 908 F. Supp. 400, 411-12 (N.D. Miss. 1995).

Section 187 provides as follows:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Law (1971).

California clearly has a substantial relationship to the parties to the assignment. Accordingly, under § 187(2)(b), application of California law is appropriate unless application of

that law would be contrary to a fundamental policy of a jurisdiction which has a materially greater interest than California in determining the validity of the assignment and which, absent the choice of California law made by the parties, would be the jurisdiction whose law was applied. I will assume that if the parties had not chosen the application of California law, Maryland would have provided the applicable law as to the state law claims and federal common law would have been applicable as to the RICO claims. Therefore, the question becomes whether it would be contrary to a fundamental policy of either Maryland or the United States to refuse to enforce a contract providing for payment of a contingent fee to a witness.

AFS has pointed to nothing to suggest that is so. To the contrary, the Maryland Rules of Professional Conduct applicable to members of the bar recognize that "[t]he common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee." Md. Rules 16-812, Rules of Professional Conduct 3.4 cmt. (2000). In my judgment this rule is fundamentally sound. Financial arrangements that provide incentives for the falsification or exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of the witnesses.[3]

---

[3] I have structured my analysis in the text as a choice-of-law issue. I have done so because California law so clearly prohibits witness contingency fee agreements. Perhaps I should add that if Maryland or federal common law were found to apply to the issue, I would hold that witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States. I recognize, as AFS argues, that firms providing auditing services to tenants in factory malls may provide an effective (and wholesome) deterrent to fraudulent billing practices by mall managers. However, they can do so without entering into contingency fee agreements. Moreover, procedural devices, such as class actions and rules permitting joinder of claims, can assist in providing protection to defrauded tenants.

For these reasons I find the assignments made by the tenants to AFS to have been void. Therefore, AFS has no standing to bring any of the claims asserted in the complaint except those stated in Counts X and XI. There is no diversity of citizenship between the parties, and I decline to exercise supplemental jurisdiction over those claims.

Date: June 19 2000

J. Frederick Motz
United States District Judge